UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| BOLSON MATERIALS | ) | CASE NO. 5:14CV01441 |
| INTERNATIONAL, INC., | ) | |
| | ) | JUDGE JOHN R. ADAMS |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | **ORDER AND DECISION** |
| | ) | (Resolving Docs. 56, 74) |
| 3D SYSTEMS CORPORATION, et al., | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the Court on Defendant Village Plastics Co.'s Motion for Partial Summary Judgment.  Doc. 56.  Also pending before this Court is Plaintiff's Motion to File Sur-Reply and Motion for Limited Discovery.  Doc. 74.  For the following reasons, Defendant's motion for partial summary judgment is GRANTED in part and DENIED in part.  Plaintiff's motions for leave to file a sur-reply and conduct limited discovery are DENIED.

I.      **FACTS AND PROCEDURAL HISTORY**

These facts are not in dispute:

Plaintiff Bolson Materials International, Inc. ("Bolson") is a Canadian corporation that provides materials and applications in the field of three-dimensional printing, commonly known as "3D" printing.  Doc. 62.  Defendant Village Plastics Co. ("Village Plastics") is an Ohio company that manufactures filament used in certain 3D printing machines.  On February 4, 2008, Bolson and Village Plastics entered into a Non-Disclosure and Non-Compete Agreement ("Non-Compete Agreement"), in which Village Plastics agreed to provide certain filaments.  Doc. 56-1 at 4; Doc. 62 at 3.  Under the terms of the Non-Compete Agreement, Village Plastics agreed not to sell certain filaments to others except when: 1) the Village Plastics customer is not an existing

Bolson customer; and 2) the Village Plastics customer is using the product "in-house;" and 3) the Village Plastics customer is not reselling the filament. Doc. 43-1. To terminate the agreement, the Non-Compete specifically stated: "'Ending the relationship' as far as this Agreement is concerned is defined as a period for 90 successive days without a filament order from [Bolson] to [Village Plastics]." Doc. 43-1. Village Plastics' obligation under the non-compete provisions was to continue for 12 months after Bolson ended its relationship with Village Plastics.

Village Plastics then purchased specific machines to manufacture filament for Bolson's needs. In order to ensure that Village Plastics could cover the cost of the new machines, the parties executed a "Blanket Purchase Order," whereby Bolson agreed to supply Village Plastics an average of 500 pounds of resin per month to be extruded into filament for one year. Doc. 43-2; Doc. 26. The Blanket Purchase Order set forth the pricing and specifications for the materials used in manufacturing the filament. Doc. 43-2. As the parties continued doing business with each other, Bolson would give separate purchase orders to Village Plastics for specific kinds and quantities of filament needed, and Village Plastics would fill and ship the orders back to Bolson. Doc. 26 at ¶26.

In 2012, a dispute arose between the parties over allegedly contaminated filament sent to Bolson by Village Plastics. Doc. 26 at ¶27; Doc. 26-4. During the same timeframe, Bolson allegedly had an outstanding account with Village Plastics in the amount of $68,531.79. In order to resolve both disputes, the parties negotiated and executed a Settlement Agreement and Release ("Release"). Doc. 26-4. According to the terms of the Release, Village Plastics issued a $30,000 credit to Bolson's account, leaving a balance of $38,531.79. In return, Bolson agreed to pay the remaining account balance in full within 60 days of the Effective Date of the Release, i.e., November 22, 2013. Doc. 26-4.

2

After the Release was executed, Village Plastics asked Bolson to sign another non-compete agreement, which would have substituted for the original.  Doc. 26 at ¶49.  Village Plastics also demanded a completed Business Credit Application with Personal Guaranty.  Doc. 72 at ¶7.  Bolson did not execute and deliver the documents, and likewise, it is undisputed that Bolson never sent another purchase order to Village Plastics.  Doc. 72 at ¶10.

Bolson filed the underlying lawsuit on June 19, 2014, naming Village Plastics and its current parent company, 3D Systems Corporation.  Doc. 1.  Bolson later amended its complaint to include the following claims:

COUNT I:       Breach of Contract – Before Release

COUNT II:      Breach of Contract – After Release

COUNT III:     Breach of Implied Covenant of Good Faith and Fair Dealing under the Agreement

COUNT IV:     Breach of Implied Covenant of Good Faith and Fair Dealing under the Release

COUNT V:      Promissory Estoppel

COUNT VI:     Tortious Interference with Business Relations

COUNT VII:   Fraud

COUNT VIII:  Declaratory Judgment

COUNT IX:     Breach of Contract – Contamination Claim

COUNT X:      Breach of Contract – Delay Claim

COUNT XI:     Breach of Express Warranty under R.C. 1302.26

COUNT XII:    Breach of Implied Warranty under R.C. 1302.27

COUNT XIII: Breach of Implied Warranty of Fitness for Particular Purpose under R.C. 1302.28

Doc. 26. Bolson later dismissed Counts 3 and 4 of the Amended Complaint and also dismissed Defendant 3D Systems (which dismissed Count 4). Docs. 54, 67. Village Plastics filed an Answer to the Amended Complaint, with a Counterclaim alleging: 1) Breach of Contract – Release; 2) Breach of Contract – Action on Account; 3) Unjust Enrichment; and 4) Declaratory Judgment. Doc. 43.

At the case management conference, the parties indicated a dispute over the scope of the Release. As such, the Court ordered discovery on issues related to the Release Agreement, including its scope. Following the limited discovery process, Village Plastics filed the underlying motion for partial summary judgment. After reviewing the briefing and evidence in accordance with Fed.R.Civ.P. 56, the Court GRANTS summary judgment on Counts 5, 7, and 9 through 13, and DENIES judgment as a matter of law on Count 1. Further, the Court declares the rights and obligations of the parties under Count 8. Therefore, the only remaining claims in the case are Counts 1 and 2.

## II.      LEGAL STANDARD

A party seeking summary judgment must show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A fact is material if it is one that might affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary burdens. *Id*. at 252. Further, the Court must view a summary judgment motion "in the light most favorable to the party opposing the motion." *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). The pivotal question in deciding a motion for summary judgment is whether a reasonable fact finder *could* make a finding in favor of either party. *See Anderson* 477 U.S. at 250 ("The inquiry performed is the threshold inquiry of determining whether there is the need for a trial – whether, in other words, there are any genuine factual issues

that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.").

The initial burden of showing the absence of any "genuine issue" belongs to the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmoving party. The nonmoving party may not simply rely on its pleadings, but must "produce evidence that results in a conflict of material fact to be resolved by a jury" or other fact-finder at trial. *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995). A party opposing summary judgment must show that there are facts genuinely in dispute, and must do so by citing to the record. Fed. R. Civ. P. 56(c)(1)(a).

## III.   LEGAL ANALYSIS

### A.   <u>Count 8:  Declaratory Judgment</u>

For clarity and efficiency, the Court first turns to Count 8 of the Amended Complaint. Bolson asks this Court to declare the scope of the Release and further requests the Court to hold that Village Plastics fraudulently induced Bolson to enter into the Release on a promise of a continuing business relationship.  In the alternative, Bolson asks this Court for a finding that a mistake occurred preventing a meeting of the minds required to form a valid contract.  As such, Bolson seeks a declaration that the Release agreement is void.  In the alternative, Bolson seeks a declaration that it is entitled to rescind the Release based on mistake.  Doc. 26.

This Court is not required to entertain an action for declaratory judgment.  *Am. Home Assur. Co. v. Evans*, 791 F.2d 61, 63 (6th Cir. 1986).

> In deciding whether a case is appropriate for declaratory judgment, the principal criteria are (1) whether the judgment would settle the controversy; (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations at issue; (3) whether the declaratory remedy is

5

being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for *res judicata*"; (4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and (5) whether there is an alternative remedy that is better or more effective.

*Id.* at 63.  Here, the declaratory action involves the same controversy and arguments as other claims within the Amended Complaint.  Deciding the rights of the parties and the scope of the Release will resolve most claims asserted in the case and streamline the remaining litigation to maximize judicial efficiency.  Thus, the Court makes the following declaration.

In analyzing the Release, the Court applies fundamental principles of contract law.  To interpret a contract, a court must look to the "plain and ordinary meaning of the language used in the contract unless another meaning is clearly apparent from the contents of the agreement." *Triad Realty, L.L.C. v. SVG Mgmt., L.L.C.*, 2014 WL 2156775 at *3, 2014 – Ohio – 2157; *Delay v. Rosenthal Collins Group, LLC*, Case No. 2:07-cv-568, 2011 WL 1237629, *5 (S.D. Ohio March 29, 2011) (where a release is " "'plain and unambiguous' the intent of the parties must be determined 'through only the language employed.'").

### 1.  Scope of the Release Agreement

The Court applies these principles of contract interpretation to first determine the scope of the Release.  The agreement specifically states:

> \* \* \*
> **RECITALS**
>
> **WHEREAS**, [Bolson] has purchased certain products from [Village Plastics], and [Village Plastics] has supplied certain products to [Bolson]….
>
> **WHEREAS**, [Bolson] has made certain allegations against [Village Plastics] including, without limitation, that the Products were contaminated and that delays in shipping the Products damaged [Bolson's] business.

6

**WHEREAS**, [Bolson's] account with [Village Plastics] is currently past due in the amount of $68,531.79 (the "Account Balance").

**WHEREAS**, without any admission of liability or fault, the Parties desire to resolve this matter in accordance with the terms of the Agreement and resolve all issues relating to the Account Balance and allegations or claims of [Bolson] relating to the alleged contamination delays.

**NOW THEREFORE,** in consideration of the foregoing and the representation, warranties, covenants and agreements contained herein, the parties agree as follows:

1. **Incorporation.**    The above stated Recitals are incorporated herein by reference.

2. **Consideration**.

    A. In return for the release and covenants contained herein, and without any admission of liability or fault, [Village Plastics] hereby issues a $30,000 credit to [Bolson] (the "Credit"), thereby reducing [Bolson's] Account Balance to $38,531.79 (the "Remaining Account Balance").

    B. In return for the Credit, and without any admission of liability or fault, [Bolson] hereby (i) agrees to pay the Remaining Account Balance to [Village Plastics] in full within 60 days of the Effective Date; and (ii) provides the release contained herein to [Village Plastics].

3. **Release by BMI.**   Upon execution of this Agreement, and for good and valuable consideration, the sufficiency of which is hereby acknowledged, [Bolson], on behalf of itself and its successors and assigns, hereby releases and forever discharges [Village Plastics], and its shareholders, directors, officers, employees, agents,…of and from any and all claims, damages, obligations, losses and/or liabilities [Bolson], or its successors and assigns, has or may have against …[Village Plastics]… whatsoever including, without limitation, [Bolson's] claims that the Products were contaminated or that delays in shipping the Products damaged [Bolson's] business.

    * * *

Doc. 26-4.

The parties have a dispute about the scope of the release language in paragraph 3.  Bolson argues that the language of the recitals (which set forth facts about a dispute over contaminated filament) should be given effect to limit the scope of the Release to just those claims about contaminated filament and resulting delays.  Village Plastics argues that the recitals are not within

the operative language of the agreement, and the release language itself is so broad that it covers any claims Bolson had prior to the execution of the release, including claims for breach of contract under the Non-Compete Agreement.

In looking at the plain language of the Release, the recitals are incorporated into the operative language of the agreement through paragraph 1, entitled "Incorporation."  As such, the recitals are part of the operative language and serve to limit the scope of the release language to only those claims relating to contaminated filament and shipping delays.

The Court recognizes that the release language of paragraph 3, on its own, could seem to be fairly broad.  However, the language must be read within the context of the entire agreement, including the recitals incorporated into the operative provisions.  This is further highlighted when the release language includes a reference back to the facts of the dispute by stating "…without limitation, [Bolson's] claims that the Products were contaminated or that delays in shipping the Products damaged [Bolson's] business."  Doc. 26-4.  This added language serves to connect the release of liability back to the recitals and the subject of the settlement agreement, i.e., contaminated filament, delays, and account balances.

The language of the Release is clear and unambiguous.  The scope of the Release is limited to the dispute over allegedly contaminated filament, shipping delays, and any claims arising out of those events.  The Release is a separate contract from the Non-Compete Agreement, leaving the Non-Compete in full effect to the extent that the parties' rights and obligations are not affected by the Release.

### 2.  Fraud in the Inducement

The Court next turns to Bolson's argument for declaratory judgment because, allegedly, it was fraudulently induced to enter into the Release agreement based on promises of continued business by Village Plastics.  Village Plastics argues that it made no such guarantees.  To determine the parties' rights and obligations, the Court looks to the elements of fraudulent inducement, which are essentially the same as a claim for fraud.  *Onyx v. Environ'l Serv. V. Maison*, 325 F.Supp.2d 833 (N.D. Ohio 2004).  To maintain a claim for fraud, a party must demonstrate: 1) a representation, 2) material to the transaction, 3) made falsely, with knowledge of its falsity, 4) with the intent to mislead another into relying upon the false statement, 5) justifiable reliance on the representation, and 6) resulting injury proximately caused by such reliance.  *Id.*

In this case, the Court need not evaluate all factors since Bolson cannot demonstrate a genuine issue of material fact that it was injured as a proximate cause of its reliance on any promises from Village Plastics.  First, as described above, the Release did not alter or substitute for the terms and obligations set forth in the Non-Compete Agreement.  Therefore, the parties had an on-going business relationship – despite any alleged promises from Village Plastics – at the time Bolson executed the Release.  To continue that business relationship, the Non-Compete required Bolson to send Village Plastics a purchase order requesting filament.  If Bolson failed to send a purchase order for 90 days, then the agreement would end.  While Village Plastics wanted a credit application and a revised Non-Compete, those documents were not executed, leaving the original Non-Compete in place.  Bolson cannot maintain a claim of fraudulent inducement since the parties do not dispute that Bolson never sent a purchase order after the execution of the Release.  Bolson's own failure to act triggered the end of the Non-Compete and the business relationship.  Doc. 72.

9

### 3.  Mistake

The last argument in Bolson's claim for declaratory judgment is that it made a mistake in believing the scope of the Release was limited to the claims surrounding the contaminated filament and shipping delays.  Doc. 26 at ¶130-35.  Because the Court has already determined the scope of the Release.  This claim is moot.

Given all of this, the Court declares that the scope of the Release is limited to claims arising from the alleged contamination of filament and shipping delays.  Further, the Release obligates Bolson to pay Village Plastics $30,000 within 60 days of the Effective Date.  There is no genuine issue of material fact on the claim of fraudulent inducement or mistake; and therefore, the Release is not void and is not subject to rescission.  Because it is "…settled under the law of Ohio that a release is an absolute bar to a later asserted claim encompassed in the scope of the release," in accordance with the findings of this Court, there is no genuine issue of material fact as Counts 9-13, since they all assert claims related to contaminated filament or shipping delays.  *Waste Mgmt., Inc. v. Danis Indus. Corp.,* C-3-00-256, 2004 WL 5345389, at *8 (S.D. Ohio Feb. 24, 2004).  Village Plastics is entitled to summary judgment on Counts 9-13.

### B.  <u>COUNT 1:  Breach of Contract – Before Release</u>

Village Plastics argues that summary judgment is appropriate on all claims related to a breach of the Non-Compete Agreement, which arose prior to the execution of the Release.  Because the Court finds above that the scope of the Release does not address claims for violation of the Non-Compete Agreement, there remain genuine issues of material fact on this claim.  Therefore, summary judgment is denied as to Count 1.

C. **COUNT 5:  Promissory Estoppel**

Bolson asserts a promissory estoppel claim against Village Plastics, arguing that Village Plastics promised to continue in a business relationship with Bolson after the execution of the Release.  Bolson argues that this promise induced them to sign the Release, and but for the assurance of ongoing business, Bolson would not have executed the agreement.

In Ohio, the elements of promissory estoppel require "[a] promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise." *McCroskey v. State* (1983), 8 Ohio St.3d 29, 30, 8 OBR 339, 456 N.E.2d 1204, citing Restatement of the Law, Contracts 2d (1973), Section 90. A "plaintiff cannot invoke the doctrine of promissory estoppel on the basis of alleged promises that contradict [a] written contract." *Kashif v. Cent. State Univ.,* 133 Ohio App.3d 678, 684, 729 N.E.2d 787 (Ohio App. 10 Dist.1999); *see also Borowski v. State Chem. Mfg. Co.,* 97 Ohio App.3d 635, 643, 647 N.E.2d 230 (1994) ("Promissory estoppel does not apply to oral statements made prior to the written contract, where the contract covers the same subject matter."); and *Lippert v. University of Cincinnati,* 1996 WL 566012, *4 (Ohio App. 10 Dist.1996) ("While this court allows promissory estoppel claims to be argued alternatively to breach of contract claims ... the oral agreement on which the promissory estoppel claim is based cannot be used to alter the unambiguous written contract."). *Executone of Columbus, Inc. v. Inter-Tel, Inc.*, 665 F.Supp.2d 899, 919 (S.D. Ohio 2009).  Furthermore, the party who asserts the promissory-estoppel claim bears the burden to prove by clear and convincing evidence all the elements of the claim. *In re Estate of Popov,* Lawrence App. No. 02CA26, 2003-Ohio-4556, 2003 WL 22017299, at ¶ 30.

11

Here, Bolson cannot demonstrate an issue of fact on the claim for promissory estoppel. First, the argument that it entered into the Release in exchange for Village Plastics agreeing to an ongoing business relationship touches on the very subject matter set forth in the Release. Paragraph 2, "Consideration," outlines the consideration Village Plastics provided in exchange for Bolson's release of liability.  As such, an alleged oral agreement cannot alter the clear and unambiguous terms set forth in the Release.  *Lippert,* 1996 WL 566012 at *4.  Furthermore, the Release includes a provision stating that:

> This Agreement constitutes the complete and exclusive expression of the Parties' agreement on the matters contained in this Agreement.  All prior and contemporaneous negotiations and agreements between the parties on matters contained in this Agreement are expressly merged into and superseded by this Agreement.  In entering into this Agreement, the parties have not relied upon any statement, representation, warranty or agreement of the other party except for those expressly contained in this Agreement.

Doc. 26-4 at ¶8.  Any other promises or oral inducements to enter into the Release were merged as a matter of law and should have been included in the agreement if Bolson wanted the promises to survive.

Next, as described above, Bolson ended the business relationship with Village Plastics by failing to provide a purchase order for 90 days, which terminated the relationship according to the Non-Compete.  Thus, even if Village Plastics made some kind of promise of an ongoing business relationship, and even if the promise survived the subsequent Release, Bolson cannot demonstrate an issue of fact that Village Plastics failed to fulfill its promise since Bolson's actions triggered the contractual end of the relationship.  Village Plastics is entitled to summary judgment on Bolson's claim for promissory estoppel.

### D.    COUNT 7:  Fraud

Bolson makes a separate claim for fraud, asserting the same arguments as set forth in its request for declaratory judgment.  Because of the reasons set forth above, the Court finds that Bolson fails to demonstrate a genuine issue of material fact on its claim for fraud, and Village Plastics is entitled to summary judgment.

### E.    Motions for Sur-Reply and Limited Discovery

Bolson filed a motion requesting leave to file a sur-reply and limited discovery related to certain declarations attached to Village Plastics' reply in support of summary judgment.  The Court does not need additional briefing to determine the issues in the motion for partial summary judgment and therefore, denies the motion for a sur-reply.  The Court also did not rely on the provisions and declarations with which Bolson takes issue, so additional discovery is unnecessary.  The motion for limited discovery is denied.

## IV.    CONCLUSION

Based upon the reasons stated herein, this Court has resolved Count 8 by declaring the scope of the Release and the rights and obligations of the parties under the agreement.  Further, in accordance with the scope of the Release, and the facts presented according to Fed.R.Civ.P. 56, there are no genuine issues of material fact as to Counts 5, 7, and 9 through 13.  Thus, summary judgment is GRANTED on these claims.  However, the Court DENIES judgment as a matter of law on Count 1.  As such, the only remaining claims in this case are Counts 1 and 2.  Defendant Village Plastics' motion for partial summary judgment is GRANTED in part and DENIED in part.

IT IS SO ORDERED.

DATE: September 30, 2016

/s/ John R. Adams_____
Judge John R. Adams
UNITED STATES DISTRICT COURT