UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| BOLSON MATERIALS, INTERNATIONAL, INC., | ) ) ) | CASE NO. 5:14CV01441 |
| Plaintiff, | ) ) | JUDGE JOHN R. ADAMS |
| vs. | ) ) ) | **ORDER AND DECISION** |
| 3D SYSTEMS CORPORATION, et al., | ) ) | (Resolving Docs. 115 and 116) |
| Defendants. | ) | |

This matter is before the Court on a motion for summary judgment filed by Defendants/Counterclaim Plaintiffs, Village Plastics Co. ("Village Plastics") and 3D Systems Corporation ("3D Systems"). Docs. 115 and 116. Defendants have moved for judgment as a matter of law on the Amended Complaint filed by Plaintiff Bolson Materials International, Inc. ("Bolson"), along with the Defendants' Counterclaim. The Court finds that no genuine issues of material fact exist as to Bolson's claims or Defendants' Counterclaim. As such, for the following reasons, Village Plastics and 3D Systems are entitled to judgment as a matter of law, and their motion for summary judgment is GRANTED.

I.  FACTS AND PROCEDURAL HISTORY

"All parties in this action are involved in the field of three dimensional printing, commonly referred to as '3D printing.'" Doc. 26 at 2. A 3D printing machine utilizes a plastic filament or metal wire unwound from a coil that is melted and deposited in layers to form a three-dimensional object. Doc. 26 at 2. Bolson is a Canadian materials company that "develops and provides

materials and applications for 3D printing. Bolson's primary product is the sale of filament on vacuum sealed spools to be inserted…" after-market into cassettes used in rapid prototyping machines for 3D printing. Doc. 26 at 2. Village Plastics is a manufacturer of thermoplastic welding rods and filament for use in plastic fabricating and 3D printing. Doc. 26 at 3. 3D Systems provides 3D printing goods and services and acquired Village Plastics after Village Plastics and Bolson executed the contract at issue.

On February 4, 2008, Bolson and Village Plastics executed a Non-Disclosure and Non-Compete Agreement (at times "Non-Compete Agreement"). Doc. 43-1. The agreement provided:

> This Agreement shall govern the conditions of disclosure by [Bolson] to [Village Plastics] of certain "Confidential Information" including but not limited to material specifications, dimensional specifications, supplier details, data, trade secrets and intellectual property relating to the production of:
>
> Filaments for use in Fused Deposition Method (FDM) type prototyping machines.
>
> * * *
>
> That [Village Plastics] shall not directly or indirectly acquire any interest in, or design, create, manufacture, sell or otherwise deal with any FDM filament, based upon or derived from the information, except as may be expressly agreed to in writing by [Bolson].
>
> FOR GOOD CONSIDERATION, the Undersigned jointly and severally covenant and agree not to compete with the business of [Bolson] and its lawful successors and assigns. The term "not compete" as used herein shall mean that [Village Plastics] shall only sell filaments that can be used in FDM type protoyping machines where:
>
> 1. The [Village Plastics] customer is not an existing [Bolson] customer AND
> 2. The [Village Plastics] customer is using the product "in-house" AND
> 3. The [Village Plastics] customer is not reselling the filament
>
> * * *

Doc. 43-1.

In 2012, Bolson alleged that Village Plastics supplied contaminated filament. Doc. 26. In November of 2013, the parties entered into a settlement and release agreement to resolve these allegations. Doc. 26. At the time of the release, Bolson had an outstanding account balance with Village Plastics, and as part of the agreement, Village Plastics provided a credit that reduced the account balance. Docs. 26 and 43. However, it is undisputed that Bolson's account remains outstanding.

In June of 2014, Bolson filed a Complaint alleging a breach of the Non-Compete Agreement. Bolson later amended the Complaint, making claims for breach of the Non-Compete Agreement prior to the execution of the release agreement, breach of the Non-Compete Agreement after the execution of the release agreement, breach of implied covenant of good faith and fair dealing under the Non-Compete Agreement, breach of implied covenant of good faith and fair dealing under the release agreement, promissory estoppel, tortious interference with business relations, fraud, declaratory judgment, breach of contract asserting a claim for contaminated filament, breach of contract in delaying filament orders, breach of express warranty under R.C. 1302.26, breach of implied warranty under R.C. 1302.27, and breach of implied warranty of fitness for a particular purpose under R.C. 1302.28. Village Plastics filed a Counterclaim alleging breach of the release agreement, "breach of contract – action on account," unjust enrichment, and declaratory judgment.

The parties then stipulated to the dismissal of certain counts, and Village Plastics filed a motion for partial summary judgment as to the scope of the release agreement. The Court granted the motion in part, leaving breach of the Non-Compete Agreement before and after the execution of the release as the only remaining claims in this case.

Village Plastics has filed a motion for summary judgment on these two remaining claims and on its Counterclaim. After reviewing the evidence in a light most favorable to Bolson, the Court finds that there are no genuine issues of material fact remaining. Village Plastics is entitled to summary judgment on Bolson's breach of contract claims and on the Counterclaim.

## II. LEGAL STANDARD OF REVIEW

A party seeking summary judgment must show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A fact is material if it is one that might affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary burdens. *Id.* At 252. Further, on summary judgment, the inferences to be drawn from underlying facts must be viewed "in the light most favorable to the party opposing the motion." *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). The pivotal question in deciding a motion for summary judgment is whether a reasonable fact finder *could* make a finding in favor of either party. *See Anderson* 477 U.S. at 250 ("The inquiry performed is the threshold inquiry of determining whether there is the need for a trial – whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.").

The initial burden of showing the absence of any "genuine issue" belongs to the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmoving party. The nonmoving party may not simply rely on its pleadings, but must "produce evidence that results in a conflict of material fact to be resolved by a jury" or other fact-finder at trial. *Cox v. Kentucky Dep't of Transp.*, 53 F.3d

146, 150 (6th Cir. 1995). A party opposing summary judgment must show that there are facts genuinely in dispute and must do so by citing to the record. Fed.R.Civ.P. 56(c)(1)(a).

## III. LEGAL ANALYSIS

### A. Breach of the Non-Compete Agreement

Bolson alleges that Village Plastics breached the Non-Compete Agreement, before and after the execution of the release, by selling any filament to third parties. Village Plastics argues that it was permitted to sell filament under certain conditions set forth in the agreement. The company argues that it followed the conditions and did not violate the Non-Compete Agreement.

"To establish a breach of contract claim, a plaintiff must prove (1) the existence of a contract, which requires an offer, acceptance, and consideration; (2) performance by the plaintiff; (3) breach by the defendant; and (4) damage or loss to the plaintiff." *Kirkland v. St. Elizabeth Hosp. Med. Ctr.*, 34 Fed. Appx. 174, 178 (6th Cir. 2002) (citing *Nilavar v. Osborn,* 127 Ohio App.3d 1, 711 N.E.2d 726, 732 (1998)). "Under Ohio law, courts are required to give unambiguous contract provisions their plain meaning." *Books A Million, Inc. v. H & N Enterprises, Inc.*, 140 F. Supp. 2d 846, 853 (S.D. Ohio 2001) (citing *Winningham v. North American Resources Corp.,* 42 F.3d 981, 985 (6th Cir.1994)). To resolve a contract dispute, the Court looks to the "plain and ordinary meaning of the language used in the contract unless another meaning is clearly apparent from the contents of the agreement." *Triad Realty, L.L.C. v. SVG Mgmt., L.L.C.*, 2014 WL 2156775 at *3, 2014 – Ohio - 2157.

"A contract provision is ambiguous if it is reasonably susceptible to two or more interpretations." *Books A Million, Inc.*, 140 F. Supp. 2d at 853–54 (citing *United States Fidelity and Guaranty Co. v. St. Elizabeth Medical Center,* 129 Ohio App.3d 45, 716 N.E.2d 1201, 1208

(1998); *United Telephone Co. v. Williams Excavating, Inc.,* 125 Ohio App.3d 135, 153 (1997)). "If a contract is clear and unambiguous, then its interpretation is a matter of law and there is no issue of fact to be determined." *State ex rel. Parsons v. Fleming,* 68 Ohio St.3d 509, 628 N.E.2d 1377, 1379 (1994). It is well settled, however, "that ambiguities in an integrated contract justify the use of parol evidence for their resolution." *Clarke v. Hartley,* 7 Ohio App.3d 147, 454 N.E.2d 1322, 1326 n. 3 (1982).

> *If* a court determines that a contract provision is ambiguous, *then* it "may use traditional methods of contract interpretation to resolve the ambiguity, including drawing inferences and presumptions and introducing extrinsic evidence." *Boyer,* 986 F.2d at 1005.
>
> Courts may not, however, use extrinsic evidence to create an ambiguity. Rather, the ambiguity must be patent; that is, apparent on the face of the contract. In *Local 783, Allied Industrial Workers v. General Electric Co.*, 471 F.2d 751 (6th Cir.), *cert. denied,* 414 U.S. 822, 94 S.Ct. 120, 38 L.Ed.2d 55 (1973), we wrote that "[o]nly when the court has determined that the contract is ambiguous is a construction of the clause necessary. After a finding of ambiguity has been made, '[extrinsic evidence] is admissible to aid in its interpretation.' " *Id.* at 757 (quoting *Tennessee Consol. Coal Co. v. United Mine Workers,* 416 F.2d 1192, 1198 (6th Cir.1969), *cert. denied,* 397 U.S. 964, 90 S.Ct. 999, 25 L.Ed.2d 256 (1970)).

*Schachner v. Blue Cross and Blue Shield of Ohio*, 77 F.3d 889, 893 (6th Cir. 1996) [emphasis added].

Here, the plain language of the Non-Compete Agreement allows Bolson to sell some form of filament under three specific conditions:

1. The Village Plastics' customer is not an existing Bolson customer AND

2. The Village Plastics customer is using the product "in-house" AND

3. The Village Plastics customer is not reselling the filament

6

Bolson argues that the term "fused deposition method" is ambiguous and points to extrinsic evidence of the development of 3D printing technology and ultimately concludes that Village Plastics is prohibited from selling any type of filament. However, the plain language of the agreement explicitly allows Village Plastics to sells some type of filament with three specific restrictions. Doc. 43-1 ("The term 'not compete' as used herein shall mean that [Village Plastics] shall only sell filaments that can be used in FDM type protoyping machines where…"). Thus, the Court need not move to the issue of what type of filament Village Plastics is permitted to sell, because Bolson has not demonstrated any evidence that Village Plastics is selling filament in violation of the three conditions set forth above.

While it appears undisputed that Village Plastics is selling some type of filament to third parties, there is no evidence in the record as to whether the filaments are being resold or whether they are being used in-house. Instead, Bolson provides information from third-party websites to argue that the companies are "re-sellers." While this may be true, the Non-Compete Agreement provides that the third party "is not reselling the filament."

Bolson has provided no evidence that the filament sold to these third parties is being re-sold to other customers. Simply because the third party sells after-market products does not mean that the company is re-selling Village Plastics' filament. Bolson asks this Court to speculate that the volume and type of product sold to each company necessarily means the company is then reselling it to consumers. The Court is not permitted to speculate. There is no evidence in the record that the particular filament provided by Village Plastics was being resold by third parties.

Bolson argues in their brief that the Non-Compete Agreement prohibited Village Plastics from selling to customers who are deemed "re-sellers." This is not what the plain language of the

agreement provides. Instead, the Non-Compete Agreement focuses on whether the third party is "reselling the filament" and not on whether the third party generally considered an after-market "re-seller." Thus, Bolson has not maintained its burden of pointing to evidence that the filament was being re-sold. This is not a question of fact for a jury to decide, but rather, an essential element of the claim, and Bolson was required to produce some evidence to create an issue of fact as to each element of its breach of contract claim. Without this evidence, the Court will not speculate, and Village Plastics is entitled to judgment as a matter of law.

### B. Village Plastics' Counterclaim

Village Plastics has asserted a counterclaim for $48,637.83, plus interest and costs, since January 21, 2014. Doc. 43. Bolson does not dispute that it owes the money on account but argues that it is uncertain about whether the money is owed to Village Plastics or 3D Systems. The record confirms that 3D Systems acquired Village Plastics and its receivables, and therefore, 3D Systems owns the account. Since the parties agree that the money is owed, the Court finds there is no genuine issue of material fact remaining, and Village Plastics is entitled to summary judgment on its Counterclaim.

Having found a breach of contract in Bolson's failure to pay its account pursuant to the release agreement, the counterclaim for unjust enrichment must necessarily be dismissed as an alternative claim. Further, having found that Bolson has failed to demonstrate an issue of fact as to Village Plastics' violation of the Non-Compete Agreement, the Court declines to reach the issue of enforceability as requested by Village Plastics' counterclaim for declaratory relief.

## IV. CONCLUSION

Reviewing the facts in a light most favorable to Bolson, no genuine dispute of material fact exists on any claim against Village Plastics and 3D Systems. Therefore, the Defendants are entitled to judgment as a matter of law, and their motion for summary judgment is GRANTED. Furthermore, there are no genuine issues of material fact as to the Counterclaim; and thus, the Defendants are entitled to judgment as a matter of law on their affirmative claims. Defendants' motion for summary judgment on their Counterclaim is GRANTED.

IT IS SO ORDERED.

Dated: 09/19/2017  /s/John R. Adams
JOHN R. ADAMS
UNITED STATES DISTRICT JUDGE